UNITED STATES of America, Plaintiff-Appellee,

v.

Jose Alfredo HERNANDEZ-FRAIRE, Defendant-Appellant.

No. 98-3192.

United States Court of Appeals,

Eleventh Circuit.

April 6, 2000.

Appeal from the United States District Court for the Middle District of Florida. (No. 98-00042-CR-ORL-18A), G. Kendall Sharp, Judge.

Before DUBINA and BLACK, Circuit Judges, and HILL, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellant Jose A. Hernandez-Fraire ("Hernandez-Fraire") appeals his judgment of conviction entered following his guilty plea to one count of being unlawfully in the United States after having been previously deported, in violation of 8 U.S.C. § 1326. Hernandez-Fraire contends that his plea was not made knowingly and intelligently because the district court failed to inform him of his right to plead not guilty, his right to the assistance of counsel at trial, his right to confront and cross-examine adverse witnesses at trial, and his right against compelled self-incrimination. After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we conclude that the district court committed plain error when it failed to inform Hernandez-Fraire of the aforementioned rights as required by Federal Rule of Criminal Procedure 11(c)(3) ("Rule 11"). Accordingly, we vacate Hernandez-Fraire's sentence and remand this case to the district court for further proceedings consistent with this opinion.

*I. Background*

The United States deported Hernandez-Fraire on October 8, 1996, following his conviction for burglary. Subsequently, Hernandez-Fraire returned to the United States, and federal authorities arrested him for illegal re-entry into the United States, in violation of 8 U.S.C. § 1326.

On April 28, 1998, Hernandez-Fraire pled guilty to illegal re-entry into the United States. As required by Rule 11, the district court addressed Hernandez-Fraire in open court. The following colloquy took place:

> THE COURT: All right sir. You are charged in count one of the indictment that on or about the 15th of December, 1997, in Osceola County that you had previously been arrested and deported from the United States without obtaining consent from the Attorney General. Do you understand what you're being charged with?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And has your attorney explained to you to your satisfaction every element of the offense charged in the indictment?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And where were you deported to in 1996?
>
> MS. MILLS:[1] To Mexico, Your Honor.
>
> THE COURT: And that is where you are a permanent resident, Mexico?
>
> THE DEFENDANT: Well, I came here when I was 14 years old and I don't know nobody in Mexico City. I don't have no family in Mexico City. All my family is in California.
>
> THE COURT: Do you have any American residency such as a green card or passport or anything like that?
>
> THE DEFENDANT: All my family does.
>
> THE COURT: You. Do you?
>
> THE DEFENDANT: No. I applied for one for the amnesty and they say that Washington was going to make their decision, something that happened about my papers, they say that I didn't send them to them.
>
> THE COURT: All right. Do you understand that by entering a plea of guilty to this count that you're giving up your right to a jury trial?
>
> THE DEFENDANT: I understand that.
>
> THE COURT: Now, under the statute, under the statute, which is 8 United States Code § 1326, you could get up to 20 years imprisonment, a fine of $25,000, supervised release term of up

___

[1]Ms. Mills was Hernandez-Fraire's trial counsel.

to three years and a special assessment of $100. Has your attorney explained to you the federal guidelines for sentencing?

THE    DEFENDANT: Yes.

THE    COURT: Under the guidelines you could have an estimated offense level of 24. What would be the criminal history category?

MR.    WHERRY:[2] Criminal history category we would say three, five points for criminal history points, is that what you're speaking of, Judge?

THE    COURT: Yes.

MR.    WHERRY: Offense level would be 11.

THE    COURT: No. I just want to know what his criminal history category would be?

MR.    WHERRY: I estimate it to be a three.

MS.    MILLS: Your Honor, three to four.

THE    COURT: All right. Three. All right, sir. You would have an estimated offense level of 24 with a criminal history category of from three to four which would give you an exposure of from 63 to 96 months in prison, but by entering this plea of guilty and taking responsibility for your actions, you would be entitled to a three level reduction which would give you an exposure of from 46 to 71 months, do you understand that?

THE    DEFENDANT: Yes.

THE    COURT: Has anybody threatened you in any way to get you to enter into this plea?

THE    DEFENDANT: I really don't know about this plea because I don't know what my rights are.

MS.    MILLS: Well, your Honor, I think I can speak for Mr. Fraire. He is entering a plea of guilty because he came into the country, he knows what the elements of the offense are, that he had been deported. I think that Mr. Fraire has some questions about an appeal that he had filed that he dismissed that he never got to appeal and I explained that to him and he understands that he was legally deported from the country and came back without permission and that's what he's pleading today. And I know he has some confusion about the other conviction that he had.

THE    COURT: Did anybody make any promises to you regarding the sentence in this case?

THE    DEFENDANT: No.

---

[2]Mr. Wherry was the trial prosecutor.

3

THE COURT: Has anybody made any threats to you?

THE DEFENDANT: No.

THE COURT: During the time that you have been detained, have you been under any doctor's care or taken any prescriptions that you think might affect your ability to understand what is happening here this morning?

THE DEFENDANT: No.

THE COURT: Are you entering a plea of guilty to entering the United States illegally after having been deported because you are guilty or for some other reason?

THE DEFENDANT: I didn't understand the question.

THE COURT: All right. You are charged with entering the United States illegally after having been deported. Are you entering that plea because you are guilty or are you entering the plea for some other reason?

THE DEFENDANT: Well, I just, I have to eat, you know, and I didn't, I'm homeless in Mexico and—

(DISCUSSION OFF THE RECORD).

THE DEFENDANT. According to the papers, that's what they say.

THE COURT: All right. Would you tell me exactly what you did? You had been previously arrested and deported in October of '96. What did you do after that?

THE DEFENDANT: After being deported?

THE COURT: Yes.

THE DEFENDANT: I came back.

THE COURT: How did you come back?

THE DEFENDANT: Just come back inside the country.

THE COURT: Did you go through customs?

THE DEFENDANT: No.

THE COURT: Did you cross the border illegally?

THE DEFENDANT: Yes.

THE COURT: All right. Miss Mills, anything you'd like to add?

4

MS. MILLS: No, Your Honor.

THE COURT: Mr. Wherry.

MR. WHERRY: Do you want a statement from the government at this time?

THE COURT: Yes. Because there's no agreement, would you please state what the government could prove it if went to trial?

MR. WHERRY: Yes, sir. If the government were to go to trial in this particular matter, we would develop the criminal history of this individual of having been deported from the United States on October 8, 1996 following his conviction for burglary of a dwelling in Brevard county on 3-25-95 and having been sentenced there for 30 months. Following his deportation on October 8, 1996 in Miami, Florida, he was sent back to Mexico. At the time of deportation, his fingerprint was taken and he was explained that if he came back into the United States he would first have to have permission of the Attorney General, otherwise he'd be in violation of the law.

The record of Immigration and Naturalization Service would indicate that there was never an application filed by the defendant for reentry in the United States and the individual's identity was identified by Immigration and Naturalization Service by a fingerprint identification, his criminal history record as well as his prior deportation record [show] that this individual is the same individual before the court today and that he reentered the United States illegally and he's an illegal alien in the United States subject to deportation.

THE COURT: Would you feel it's just easier to be a criminal in this country rather than being a criminal in Mexico?

   * * *

THE COURT: All right, sir. The court will accept your plea of guilty to illegally entering the United States after being deported. I'll order a presentence report and set sentencing for August 19 at nine o'clock.

MS. MILLS: Thank you, Your Honor.

(R2-3-11)

In this colloquy, the district court did not explicitly inform Hernandez-Fraire of his right to plead not guilty, his right to the assistance of counsel at trial, his right to confront and cross-examine adverse witnesses at trial, and his right against compelled self-incrimination. The district court sentenced Hernandez-Fraire to 87 months imprisonment, to be followed by a three-year term of supervised release. Hernandez-Fraire then perfected this appeal.

5

*II. Standard of Review*

Because Hernandez-Fraire did not present the Rule 11 violations to the district court, this court will review the district court's holding for plain error. *See United States v. Wiggins,* 131 F.3d 1440, 1441-42 (11th Cir.1997); *United States v. Quinones,* 97 F.3d 473, 475 (11th Cir.1996). Plain error is error that is clear or obvious and affects substantial rights. *See Wiggins,* 131 F.3d at 1442 n. 1; *Quinones,* 97 F.3d at 475. On plain error review, the defendant bears the burden of persuasion with respect to prejudice. *See Wiggins,* 131 F.3d at 1442 n. 1; *Quinones,* 97 F.3d at 475. A district court's failure to address a core concern of Rule 11 constitutes plain error. *See Quinones,* 97 F.3d at 475.

*III. Discussion*

Rule 11 imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea. *See Wiggins,* 131 F.3d at 1442. When accepting a guilty plea, a court must address three core concerns underlying Rule 11: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Jones,* 143 F.3d 1417, 1418-19 (11th Cir.1998) (quoting *United States v. Siegel,* 102 F.3d 477, 481 (11th Cir.1996)). "A court's failure to address any one of these three core concerns requires automatic reversal." *Siegel,* 102 F.3d at 481 (quoting *United States v. Bell,* 776 F.2d 965, 968 (11th Cir.1985)). Rule 11, however, does not say that a court's only means of compliance is to read the specified items *in haec verba. See* Fed. R. Crim P. 11(h), Advisory Committee's Notes. Instead, any variances or deviations from the procedures mandated by Rule 11 that do not affect a defendant's substantial rights constitute harmless error. *See* Fed R.Crim. P. 11(h) ("any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded"); *Siegel* 102 F.3d at 481. Generally, this circuit will uphold a plea colloquy that technically violates Rule 11, but adequately addresses the three core concerns. *See Jones,* 143 F.3d at 1420 ("A defendant 'is entitled to replead only if the district court's variance from the formal requirements of Rule 11

6

impinged upon the very rights they were designed to protect.' ") (quoting *United States v. Zickert,* 955 F.2d 665, 667-68 (11th Cir.1992)).

In this appeal, Hernandez-Fraire contends that by failing to mention all of the rights listed in Rule 11(c)(3), the district court did not address the third core concern of Rule 11—that the defendant must know and understand the consequences of his guilty plea. Rule 11(c) provides:

> (c) *Advice to Defendant.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> * * *
>
>> (3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination ...

In the present case, the district court violated Rule 11(c)(3) by not explicitly informing Hernandez-Fraire of his right to plead not guilty, his right to the assistance of counsel at trial, his right to confront and cross-examine adverse witnesses at trial, and his right against compelled self-incrimination.

The government acknowledges that the district court failed to ask all the questions contemplated by Rule 11(c)(3), but argues that the district court nonetheless addressed the core concerns underlying Rule 11. In particular, the government notes that the district court informed Hernandez-Fraire of the possible penalties he would face, and that, by pleading guilty, he waived his right to a jury trial. The government asserts that the additional rights the district court omitted—the right to the assistance of counsel, the right to confront and cross-examine witnesses, and the right against compelled self-incrimination—are all inherent in the right to a jury trial. Moreover, the government posits that Hernandez-Fraire's extensive criminal history has familiarized him with the criminal justice system and the rights inherent in the right to a jury trial. *See United States v. Mosley,* 173 F.3d 1318, 1322 (11th Cir.1999) (examining a defendant's life experiences in determining whether the defendant understood the nature of the charges).

7

As the government concedes in its brief, however, this court has rejected these arguments in two other factually similar cases. *See United States v. Ortiz,* No. 98-3698, 203 F.3d 839 (11th Cir.1999) (unpublished); *United States v. Leija-Vasquez,* No. 99-2367, 192 F.3d 131 (11th Cir.1999) (unpublished).[3] Although these cases are not binding on this court, they are persuasive authority.[4] Both *Ortiz* and *Leija-Vasquez* involve appeals from similar plea colloquies before the same district judge[5] who presided in the present case. In *Ortiz* and *Leija-Vasquez,* as in this case, the court advised the defendant of his right to a jury trial, but failed to mention that at trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination. Furthermore, as in *Ortiz* and *Leija-Vasquez,* nothing in the record in this case indicates that the defendant knew he had these additional rights. *Cf. United States v. Caston,* 615 F.2d 1111, 1113-16 (5th Cir.1980) (upholding a guilty plea, even though the district court did not explicitly mention that the defendant had the right to a jury, the right to the assistance of counsel at trial, and the right against compelled self-incrimination, because the record indicated that the defendant understood the consequences of his guilty plea including his waiver of certain constitutional rights).

As in *Ortiz* and *Leija-Vasquez,* we hold that where the district court fails to inform the defendant of his Rule 11(c)(3) rights and nothing in the record indicates that the defendant is aware of these rights, the government cannot rely on the defendant's past criminal background to prove that he knows and understands these rights. We will not infer to a defendant knowledge of his Rule 11 constitutional rights based solely on his past criminal history. To do so would eviscerate the third core concern of Rule 11. *See Jones,* 143 F.3d

---

[3]We appreciate the candor of the government in calling to our attention the unpublished opinions in *Ortiz* and *Leija-Vasquez.*

[4]Eleventh Circuit Rule 36-2 states that "[u]npublished opinions are not considered binding precedent. They may be cited as persuasive authority...."

[5]The government points out that the plea colloquy used in this instant case and in *Ortiz* and *Leija-Vasquez* appears to be the standard plea colloquy used by this district judge.

at 1419 ("If ... an appellate court cannot be sure that the defendant was aware of any information required by Rule 11 to be discussed at the plea colloquy, the defendant should be permitted to withdraw his plea.").

In fact, an examination of the plea colloquy in this case reveals that Hernandez-Fraire did not understand his rights. Specifically, the court asked the question: "Has anybody threatened you in any way to get you to enter into this plea?" Hernandez-Fraire answered: "I really don't know about this plea, because *I don't know what my rights are.*" (R2-6) (emphasis added). After this response, the district court should have ensured Hernandez-Fraire was aware of his rights.

In sum, we conclude that Hernandez-Fraire did not know and understand the consequences of his guilty plea. The district court failed to determine that Hernandez-Fraire understood that by entering a plea of guilty, he waived his right to the assistance of counsel at trial, the right to confront and cross-examine adverse witnesses at trial, and the right against self-incrimination as required by Rule 11(c)(3). The district court also failed to inform Hernandez-Fraire that he had the right to persist in a plea of not guilty as required by Rule 11(c)(3). Nothing in the record indicates that Hernandez-Fraire understood these rights. The district court's failures to inform strike at the heart of what Rule 11 was designed to prevent—the unknowing and unintelligent waiver of constitutional rights. Therefore, we hold that the district court committed plain error by failing to address a core concern of Rule 11.

### IV. Conclusion

For the sake of judicial economy and fundamental fairness, the best way for district courts to address the core concerns underlying Rule 11 is to explicitly follow Rule 11. While this procedure is wise but not mandatory, we hold in this case that the district court committed plain error in failing to inform Hernandez-Fraire of his rights as required by Rule 11(c)(3). Therefore, we vacate Hernandez-Fraire's sentence and remand this case with instructions that the district court permit Hernandez-Fraire to withdraw his guilty plea.

VACATED AND REMANDED.